RECEIVED
IN ALEXANDRIA, LA.
NOV 2 8 2012
TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| AFFILIATED MORTGAGE CO. | CIVIL ACTION NO.: 3:12-cv-00042 |
| VERSUS | |
| NATIONWIDE MORTGAGE & ASSOCIATES, INC. | JUDGE ROBERT G. JAMES MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the court is a motion to dismiss filed by Nationwide Mortgage & Associates, Inc. ("Nationwide") pursuant to Fed.R.Civ.P. 12(b) on April 16, 2012 which was referred to the undersigned for report and recommendation by the District Judge.

### Facts

On an undisclosed date in 2008, Affiliated Mortgage Company ("Affiliated"), a Nevada corporation with a national correspondent division in Ouachita Parish, Louisiana, contacted Nationwide at its sole business office in Ft. Lauderdale, Broward County, Florida. The two discussed entering into an agreement under which Nationwide would sell residential mortgage loans and the servicing rights thereto to Affiliated. All solicitations and negotiations were conducted by Affiliated from its Louisiana office and by Nationwide from its Florida office.

On December 5, 2008, the parties entered into a Correspondent Origination Sales Agreement ("Sales Agreement" or "contract") which memorialized the aforementioned agreement. Among the provisions contained therein was an indemnification provision which provided

that Nationwide would indemnify Affiliated against any losses, including those resulting from a breach of any representation or warranty or covenant or agreement made by Nationwide, or any misstatement or omission of material fact in the Loan File or Credit File.  Shortly after the Sales Agreement was signed, the parties signed two addenda, the delegated underwriting addendum[1] and the desktop originator addendum[2].  Each contained indemnification language.

On February 20, 2009, Affiliated purchased a mortgage which closed on January 30, 2009 for the benefit of Rolando Gayarre and Tusimi Martinez ("Gayarre loan").  Affiliated subsequently sold the Gayarre loan to CitiMortgage, Inc.  On May 31, 2011, CitiMortgage, Inc notified Affiliated that the Gayarre loan was non-conforming due to misrepresentations, undisclosed liabilities and an inflated

---

[1] Nationwide "shall indemnify, save, and hold Affiliated ... harmless from and against any and all losses, costs, damages, and expenses, including attorney and professional fees, resulting from A. Affiliated's obligation to repurchase from an Investor any Loan, Servicing Rights, or Property held as security for any Loan arising from any defect or omission in a Loan underwritten by [Defendant].  B. [Defendant's] breach of any representation or warranty contained in the Addendum or the Agreement."

[2] "In addition to the provisions of repurchase and/or indemnification set forth in the Agreement, the Delegated Underwriting Addendum, and the Affiliated Correspondent Manual, the parties agree as follows: B. [Defendant] shall further indemnify and hold harmless Affiliated . . . against any an all loss, liability, cost, damage and/or expense, including attorney fees, resulting from [Defendant's] breach of any representation or warranty contained in the Desktop Addendum, the Agreement, the Delegated Underwriting Addendum or the Affiliated Correspondent Manual."

appraisal value.

On June 28, 2011, Affiliated put Nationwide on notice the Gayarre Loan was non-conforming and that it sought indemnification for any losses that had or would be incurred as a result of CitiMortgage Inc.'s efforts seek either indemnification or to have Affiliated repurchase the loan.

On January 12, 2012, Affiliated filed a complaint against Nationwide in the Western District of Louisiana alleging breach of contract (Doc. 1). In the complaint, Affiliated asserted both jurisdiction and venue were proper as the amount in controversy exceeded $75,000 and Nationwide was a Florida corporation who regularly conducted business in Louisiana.

On April 16, 2012, Nationwide filed the instant motion to dismiss for lack of personal jurisdiction (Doc 15). In the motion, Nationwide argued the complaint should be dismissed as it did not contain facts which established jurisdiction. In support of its argument that it did not possess the minimum contacts necessary to establish either general or personal jurisdiction, Nationwide noted it executed the contract in and conducted all business transactions from Florida. It also asserted that its office, all witnesses and all documents related to the Gayarre loan were located in Florida. Thus, its ties were to Florida.

On May 23, 2012, Affiliated filed its opposition (Doc. 12) and argued Nationwide did posses the necessary minimum contacts as it

sold the Gayarre Loan to Affiliated in Louisiana and delivered the necessary documents to Affiliated in Louisiana. It further argued that Nationwide had continuous and systematic contacts with the State of Louisiana as it regularly sold closed mortgage loans to Affiliated in Louisiana.

## Law and Analysis

The plaintiff carries the burden of making a *prima facie* showing that the defendants have meaningful contacts with the forum state. Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 564, 469 (5th Cir. 2006), quoting Wyatt v. Kaplan, 686 F.3d 276, 280 (5th Cir. 1982). The court may consider the entire record, but plaintiff's allegations in the complaint must be taken as true unless controverted by affidavit. Where conflicts exist, resolution must be made in favor of the plaintiff. See Revell v. Lidov, 317 F.3d 467, 469 (5th Cir.2002), quoting Alpine View Co., Ltd. v. Atlas Copco AB, 205 F3d 208, 215 (5th Cir. 2000).

In this case, Affiliated contends the forum state is Louisiana. "A district court sitting in diversity may exercise personal jurisdiction over a defendant to the extent permitted by state law. The Louisiana long-arm statute authorizes the exercise of personal jurisdiction to the limits of due process." Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo., 615 F.3d 364, 368 (5th Cir. 2010) citing Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 242-44 (5th Cir. 2008). See,

4

La. R.S. 13:3201(B). Jurisdiction consistent with due process exists where the defendant has purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state and the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." Alpine View Co., 205 F.3d at 214; Mink v. AAAA Development, LLC, 190 F.3d 333, 336 (5th Cir. 1999)(quoting Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999)(in turn quoting International Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945))).

As the Fifth Circuit explained in Luv n'Care. Ltd., 438 F.3d 465, 468 (5th Cir. 2006), the "Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident unless the defendant has meaningful 'contacts, ties, or relations' with the forum state." Id., quoting International Shoe, 326 U.S. at 319. Minimum contacts may be established either through contacts sufficient to assert specific jurisdiction or contact to assert general jurisdiction. Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994).

Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Only where a non-resident defendant has "'purposely directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to those activities'" are the defendant's contacts sufficient to support the exercise of specific jurisdiction over that defendant. Burger King v. Rudzewicz, 471 U.S. 462, 472-73 (1985), quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984) and Helicopteros, 466 U.S. at 414. Stated differently, specific jurisdiction exists where a defendant "'purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits of its laws.'" Dickson Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 337 (5th Cir. 1999), quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Affiliated's complaint states jurisdiction and venue are proper in this court, but the only assertions to support the statement are that "defendant is a corporation which is subject to personal jurisdiction in the Western District of Louisiana" and "regularly does business in the State of Louisiana." (Doc. 1, p. 2). No other assertions regarding Nationwide's contacts with the forum state are set forth in the complaint.

Affiliated and Nationwide each filed a memorandum in support and affidavits. Additionally, Affiliated attached a copy of the Sales Agreement to its memorandum. A review of the documents reveals that following undisputed facts:

>(1) Affiliated is a Nevada corporation with a national correspondent division in Ouachita Parish, Louisiana;
>
>(2) Nationwide's sole business office is in Fort Lauderdale, Broward County, Florida;
>
>(3) Nationwide does not possess any property in the State of Louisiana;
>
>(4) Affiliated initiated the business relationship with Nationwide in 2008;
>
>(5) Affiliated conducted all business transactions from its office in Louisiana;
>
>(6) Nationwide conducted all business transactions from its office in Florida;
>
>(7) all correspondence issued by Affiliated was sent from and on letterhead containing its Louisiana address;
>
>(8) Nationwide was responsible for delivering the mortgages to Affiliated in Louisiana;
>
>(9) Affiliated had the option of reviewing the mortgage and accepting or denying the purchase thereof; and
>
>(10) payment was made by Affiliated to Nationwide (though a location for payment was not mentioned in documents).

Affiliated contends that because Nationwide negotiated and entered into a contract with a Louisiana business, sent correspondence to and received correspondence from that Louisiana business and transferred mortgage loans to that same Louisiana business, it established the minimum contacts necessary to subject it to the jurisdiction of this court. The Fifth Circuit has consistently held that more than mere contracting, mailing of payments and engaging in communications regarding the execution and performance of the contract are necessary to establish minimum

contacts. See, Mc Fadin v. Gerber, 587 F.3d 753 (5th Cir. 2009); Moncrief Oil Int'l, 481 F.3d 309, 311 (5th Cir. 2007); Freudensprung v. Offshore Technical Services, Inc., 379 F. 3d 327, 344 (5th Cir. 2004); Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778). Thus, one must look at other factors such as where the contract was performed. Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc., 963 F.2d 90, 94 (5th Cir. 1992)(citations omitted). Additionally, "prior negotiations and contemplated future consequences, along with terms of the contract and the parties' actual course of dealing..." should be considered. Latshaw v. Johnson, 167 F.3d 208, 211 (5th Cir. 1999).

The parties each contend the contract was performed in its own forum. A review of the documentation submitted reveals that while Nationwide collected documents regarding sales in Florida, the material performance of the contract occurred in Louisiana as Nationwide was required to ship Affiliated documents for approval or rejection. This performance was substantial under the terms of the contract and outweighs the fact the loan documentation was kept in Florida.

Additionally, the terms of the Sales Agreement indicate the contract was an ongoing contract to provide loans to Affiliated for purchase. First, under Section 2.1, "Submission and Approval", it states that "[Nationwide] may, from time to time, submit a Credit File or Loan File to Affiliated for approval in accordance with the

Affiliated Correspondent Manual." (Doc. 12-1, p.7). Second, in Section 6.1, "Termination Without Cause", it provides that "[t]his agreement may be terminated by either party at any time up to 15 days written notification." (Doc. 12-1, p.16). Additional support for the finding of an ongoing agreement can be found in Affiliated's contention that the Gayerre loan was not the only loan which was submitted by Nationwide and approved by Affiliated under the Sales Agreement. Though no proof of other loans was provided by Affiliated, Nationwide does not dispute the existence of such loan sales.

Nationwide knowingly entered into an ongoing business contract with a company located in Louisiana. It performed a material obligation under the contract in Louisiana and it earned a profit from the sale of loans. Thus, it purposely availed itself of the privilege to conducting business in Louisiana and should have reasonably anticipated being haled into court here. In light of these facts, Affiliated has established a *prima facie* showing Nationwide is subject to *in personam* jurisdiction in Louisiana.

Having found sufficient minimum contacts exist, the fairness prong of the personal jurisdiction inquiry must now be addressed. The factors which must be considered include:(1) the burden upon Nationwide; (2) the interests of the State of Louisiana; (3) Affiliated's interest in obtaining relief; (4) "the interstate judicial system's interest in obtaining the most efficient

resolution of controversies"; and, (5) "the shared interest of the several States in further fundamental substantive social policies." <u>World-Wide Volkswagen</u>, 444 U.S. 286, 292 (1980).

In evaluating all of these factors, it is apparent that Louisiana is no more of an inconvenient forum to Nationwide than Florida is to Affiliated. There are documents and witnesses pertaining to the formation of the contract in both Louisiana and Florida. Travel will be required by both parties regardless of the forum chosen and neither forum's interest in resolution, efficiency or judicial economy outweighs that of the other. If anything, the fact that the plaintiff is entitled to choose between one of two forums which have jurisdiction and venue over a matter weighs in favor of the matter remaining in Louisiana. Therefore, I find that personal jurisdiction exists.[3]

Nationwide's final contention is that the suit should be dismissed for *forum non conveniens* or transferred pursuant to 28 U.S.C. §1404(a). A transfer under §1404(a) is within the court's sound discretion. <u>Jarvis v. Exxon Corp.</u>, 845 F.2d 523, 528 (5th Cir. 1988). Defendant bears the burden of establishing that the transferee forum is more convenient. <u>Pateet v. Dow Chemical Co.</u>, 868 F.2d 1428, 1436 (5th Cir. 1989).

---

[3] Nationwide argues in its motion that venue is improper for the same reasons jurisdiction is improper. Having found personal jurisdiction exists, Nationwide's allegation is without merit.

In deciding whether to transfer venue for the convenience of the parties, a court must consider the following factors:

1) The relative ease of access to sources of proof;

2) The availability of compulsory process to secure the attendance of witnesses;

3) The cost of obtaining the attendance of witnesses;

4) Other practical problems that make trial of a case easy, expeditious and inexpensive;

5) Administrative difficulties flowing from court congestion;

6) Local interest in having localized issues decided at home;

7) Familiarity of the forum with the law that will govern the case; and

8) Avoidance of conflicts of law.

Considering all of the factors which apply, the court is convinced that the interests of justice and convenience of the parties and witnesses require transfer. Though both parties contend their witnesses live in their respective states, all witnesses with knowledge of the Gayarre loan live in Florida. This is of particular importance as Nationwide argues the issue regarding whether the Gayarre loan was truly non-conforming must be answered prior to determining whether there was a breach of the contract. Thus, compulsory process is more easily available and the cost related to having witnesses testify is far less in Florida than in Louisiana. Finally, as the contract calls for the application of Texas law to any disputes, this court is in no

better position to apply Texas law than the court in Florida. Accordingly, it is more convenient to transfer the case to the Southern District of Florida, Fort Lauderdale Division for resolution.

## Conclusion

In light of the foregoing, **IT IS RECOMMENDED** that Nationwide's motion to dismiss (Doc. 5) be **DENIED**.

IT IS FURTHER RECOMMENDED that this case be transferred to the docket of the United States District Court for the Southern District of Florida, Ft. Lauderdale Division, for further proceedings.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by**

proceedings.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 28th day of November, 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE